**James W. BUTAUD, Jr., Appellant,**

v.

**SUBURBAN MARINE & SPORTING GOODS, INC., Appellee.**

**No. 2055.**

Supreme Court of Alaska.

Oct. 11, 1976.

---

Lester W. Miller, Jr., and Timothy M. Lynch, Anchorage, for appellant.

Daniel A. Gerety, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, ERWIN and BURKE, Justices.

## OPINION

ERWIN, Justice.

In our previous decision in this case, we reversed the jury's verdict and remanded the case for a new trial. We stated that the issue of the ". . . effect of the doctrine of comparative negligence on products liability cases . . .,"[1] an issue of first impression in Alaska, would have to be resolved. We now resolve this issue by holding that comparative negligence shall apply to products liability suits for personal injuries.[2]

In approving the use of the doctrine of comparative negligence in products liability cases, we are mindful of the theoretical argument that the strict liability of the defendant is difficult to compare with the contributory negligence of the plaintiff. There is a problem of measuring the parties' contribution to the injury because there is little or no evidence of the actual conduct of the seller to compare with the evidence of the conduct of the plaintiff. This theoretical comparison is more easily understood after a brief review of the development of strict liability in products cases.

The theory of imposing strict liability upon manufacturers for the harm

---

1. *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 543 P.2d 209, 214 (Alaska 1975).

2. *See Morrow v. New Moon Homes*, 548 P.2d 279 (Alaska 1976).

which their products cause is a fairly recent concept in the law. It developed out of the need to break down the barriers to recovery placed before the plaintiff in negligence and breach of warranty actions. In an action based on negligence, the plaintiff encountered difficulty in proving negligence; he was normally not in a position to isolate the negligence which led to the defect since he was not familiar with the manufacturing process.[3] Under a warranty theory of recovery, the plaintiff confronted defenses such as disclaimer, notice of breach and lack of privity also inherent in the distribution process.[4] In recognition of these problems, Dean Prosser wrote:

> If there is to be strict liability in tort, let there be strict liability in tort, declared outright, without an illusory contract mask.[5]

This concept of strict liability in tort for defective products quickly gained recognition and prominence. The first case to apply it was the 1963 California case of *Greenman v. Yuba Power Products, Inc.*[6] The court made it clear that a manufacturer ". . . is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."[7] Two years later, Prosser's proposal fell upon the receptive ears of the American Law Institute. The Institute adopted in the Second Restatement of Torts a new section, 402A, which discarded the term warranty as the basis of liability. The liability of the seller set forth in the new section is ". . . one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product."[8] The justification for imposing strict liability rests upon a basic public policy reasoning that manufacturers should bear the costs of injury resulting from their marketing of defective products rather than the injured party who is essentially powerless to protect himself.

Recently several states which adopted strict liability, as set out in section 402A of the Restatement of Torts 2d or the California decisions,[9] also have adopted a rule of comparative negligence.[10] How to apply comparative negligence to a strict liability suit has been discussed in two cases. In *Dippel v. Sciano,*[11] the Wisconsin Supreme Court reasoned that strict liability is equivalent to a finding of negligence per se and, therefore, subject to the defenses applicable to negligence. In *Hagenbuch v. Snap-in Tools Corp.,*[12] the Federal District Court reasoned that New Hampshire's comparative negligence statute applied to

---

3. *Clary v. Fifth Avenue Chrysler Center, Inc.,* 454 P.2d 244 (Alaska 1969); *Escola v. Coca Cola Bottling Co. of Fresno,* 24 Cal. 2d 453, 150 P.2d 436 (1944) (Traynor, J., concurring); *Glass v. Ford Motor Co.,* 123 N.J.Super. 599, 304 A.2d 562 (1973); Prosser, Law of Torts (4th ed. 1971), Section 97 at 650; Ashe, So You're Going to Try a Products Liability Case, 13 Hast.L.J. 66 (1961).

4. *Morrow v. New Moon Homes,* 548 P.2d 279 (Alaska 1976); *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 377 P.2d 897 (1963); Prosser, The Assault upon the Citadel, 69 Yale L.J. 1099, 1127 (1960); Prosser, *supra* note 2 at 655–56.

5. Prosser, The Assault upon the Citadel, *supra* note 4 at 1134.

6. Greenman, *supra* note 4.

7. *Id.* at 900.

8. Restatement (Second) of Torts § 402A, Comment A at 348 (1965).

9. See *Greenman, supra* note 4; *Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 104 Cal. Rptr. 433, 501 P.2d 1153 (1972); *Luque v. McLean,* 8 Cal.3d 1136, 104 Cal.Rptr. 443, 501 P.2d 1163 (1972).

10. For a list of these states, see Feinberg, The Applicability of Comparative Negligence Defense in a Strict Products Liability Suit Based on Section 402A of the Restatement of Torts 2d, 63 Insurance Counsel Journal 45, (1975). Alaska, California and Florida must be added to this list. See *Kaatz v. State,* 540 P.2d 1037 (Alaska 1975); *Li v. Yellow Cab Co.,* 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); *Hoffman v. Jones,* 280 So.2d 431 (Fla.1973).

11. 37 Wis.2d 443, 155 N.W.2d 55 (1967).

12. 339 F.Supp. 676 (N.H.1972).

strict liability cases for no other reason than that the contributory negligence statute—construed as a defense to strict liability—had been completely replaced by the comparative negligence statute. The court declined to adopt the negligence per se reasoning of the Wisconsin court because it would not presume that the New Hampshire Supreme Court would follow the same rationale.

We find it unnecessary to conceptualize the theory of the action which strict liability creates in order for us to apply comparative negligence principles to strict products liability cases which result in personal injuries. Whether the action is characterized as negligence, warranty, or in tort, the plaintiff must prove essentially the same elements to recover.[13] Further, most of the cases of strict liability for defective products have recognized a defense based on the conduct of the plaintiff, for courts have been unwilling to disregard the plaintiff's conduct and to interpret strict liability to mean absolute liability[14] even though they may have differed as to the defense itself The seller has not been converted into an insurer of his product with respect to all harm generated by its use.

Although it is theoretically difficult for the legal purist to balance the seller's strict liability against the user's negligence, this problem is more apparent than real. Professor Schwartz has stated that

It is true that the jury might have some difficulty in making the calculation required under comparative negligence when defendant's responsibility is based on strict liability. Nevertheless, this obstacle is more conceptual than practical. The jury should always be capable, when the plaintiff has been objectively at fault, of taking into account how much bearing that fault had on the amount of damage suffered and of adjusting and reducing the award accordingly. Triers of fact *are* apparently able to do this, and the benefits from the approach suggest that it be applied in all comparative negligence jurisdictions.[15]

Comparative negligence systems have long been employed in other jurisdictions, and experience has not borne out the argument that the system is difficult for courts and juries to administer.[16] Noteworthy in this regard are admiralty cases in which the rule of comparative negligence has been applied without serious problems to cases arising under the doctrine of unseaworthiness, which is a form of strict liability. *See, e. g., Pope & Talbot, Inc. v. Hawn.*[17]

▮▮ In *Kaatz v. State,*[18] we adopted the standard of comparative negligence, which will be applied in strict products liability cases. We feel that pure comparative negligence can provide a predicate of fairness to products liability cases in which the plaintiff and defendant contribute to the injury. The defendant is strictly liable due to the existence of a defective condition in the product.[19] On the other hand,

13. Prosser, *supra* note 3 at 671; Epstein Products Liability: Defenses Based on Plaintiff's Conduct, 1968 Utah L.R. 267, 283. A products liability action under the strict liability rule must adhere to the requirements set forth in *Butaud, supra* note 1.

14. *Bachner v. Pearson,* 479 P.2d 319, 329–330 (Alaska 1970); *McDevitt v. Standard Oil Co. of Texas,* 391 F.2d 364, 370 (5th Cir. 1968); *Dippel, supra* note 10 at 63; *Suvada v. White Motor Co.,* 32 Ill.2d 612, 210 N.E. 2d 182, 188 (1965). Even before its carryover to products cases, strict liability was not akin to absolute liability when the plaintiff's conduct was a factor in causing the injury. *See Sandy v. Bushey,* 124 Me. 320, 128 A. 513 (1925); *Anderson v. Anderson,*

259 Minn. 412, 107 N.W.2d 647 (1961); *Heidemann v. Wheaton,* 72 S.D. 375, 34 N.W. 2d 492 (S.D.1948); *see also* Prosser, *supra* note 3 at 522–524.

15. V. Schwartz, Comparative Negligence, 208 (1974).

16. *Kaatz v. State,* 540 P.2d 1037, 1048 (Alaska 1975).

17. 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

18. 540 P.2d 1037 (Alaska 1975).

19. *Bachner, supra* note 14 at 329. Liability is not predicated upon the seller's or user's conduct but upon the existence of a defect.

the plaintiff's liability attaches as a result of his conduct in using the product.[20] It is appropriate, therefore, that the parties' contribution to the injury be apportioned. The defendant is strictly liable for the harm caused from his defective product, except that the award of damages shall be reduced in proportion to the plaintiff's contribution to his injury.

The comparative negligence defense would be applied in the same manner as in any negligence case, with the major difference being that in products liability cases it would not be necessary to prove that a defect was caused by negligence. It is not anticipated that the trier of fact will have serious difficulties in setting the percentage that the damages would be reduced as a result of the comparative negligence of the plaintiff. Further, it would be anomalous in a products liability case to have damages mitigated if the plaintiff sues in negligence, but allow him to recover full damages if he sues in strict liability, particularly where the complaint contains alternate counts for recovery in negligence, strict liability, and/or breach of warranty.[21]

We realize that there is some dispute among commentators concerning foreseeability of misuse of products as it affects the doctrine of products liability.[22] However, we are not convinced that the doctrine of foreseeability provides a viable conceptual basis upon which to predicate a defense in products liability cases. It appears to focus on negligence rather than upon proximate cause, which is the primary issue in products liability.[23] To require foreseeability is to require the manufacturers to use due care. However, in strict liability the manufacturer is liable by operation of law even if he exercises due care; and thus, the concept is difficult to apply.

In abandoning contributory negligence as a complete bar to the plaintiff's claims, we feel that comparative negligence can serve to substantially ameliorate the harshness of contributory negligence while balancing the seller's responsibility to the public with the user's conduct in contributing to his injury.

We again reiterate our holding, for we wish to make clear that our decision herein expands upon the holding made previously in this case. The defense of comparative negligence is not limited to those cases where the plaintiff uses the product with knowledge of the defective condition, but also extends to those cases where the plaintiff misuses the product and that misuse is a proximate cause of his injuries.

In breaking new ground in this area of the law, we feel that the public policy reasons for strict product liability do not seem to be incompatible with comparative negligence. The manufacturer is still accountable for all the harm from a defective product, except that part caused by the consumer's own conduct.

In this case the appellee below raised the issue of contributory negligence based on general misuse of the snow machine; we reversed the decision because such a defense ". . . is limited to those occasions where the use concurs with

---

20. *Butaud, supra* note 1 at 211.

21. See Tentative Draft, Uniform Comparative Fault Act, § 1 (August, 1976).

22. *McDevitt, supra* note 14; *Cronin v. J.B.E. Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972); *Bradford v. Bendix-Westinghouse Auto. Air Brake Co.*, 33 Colo. App. 99, 517 P.2d 406 (1974); *Williams v. Brown Manufacturing Co.*, 45 Ill.2d 418, 261 N.E.2d 305 (1970); *General Electric Co. v. Bush*, 88 Nev. 360, 498 P.2d 366 (1972); *Kirkland v. Gen. Motor Corp.*, 521 P.2d

1353 (Okl.1974); *Findlay v. Copeland Lumber Co.*, 265 Or. 300, 509 P.2d 28 (1972); Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.R. 791 (1966); Noel, Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk, 94 Vand.L.R. 93 (1972); V. Schwartz, *supra* note 15 at 198; Annots. 46 A.L.R.3d 240 (1972); 13 A.L.R.3d 1057 (1967).

23. *Berkebile v. Brandly Helicopter Corp.*, 337 A.2d 893, 900 (Pa.1975).

knowledge of the particular defect."[24] In line with our opinion herein, we now modify the original opinion to hold that the defense of comparative negligence is applicable to this case if the appellee can establish that the appellant's racing of the snow machine and/or lack of maintenance of the machine was comparative negligence which contributed to his injuries.

The mandate as previously issued in this case is ordered amended to permit retrial of this cause of action in conformity with this opinion.

CONNOR, J., not participating.

RABINOWITZ, J., concurs.

BURKE, J., dissents.

RABINOWITZ, Justice (concurring).

I generally agree with the court's treatment of the issues which arise in the situation where a plaintiff who is himself negligent asserts a claim founded upon strict liability. Perhaps it is only a semantic difference rather than reflective of a true functional distinction but I prefer adoption of a comparative causation analysis in strict liability cases. Thus, I would require the trier of fact to compare the harm caused by the product's defect with the harm caused by the claimant's own negligence. *See Solet v. M/V Capt. H.V. Dufrene,* 303 F.Supp. 980, 986 (E.D.La.1969). Adoption of a comparative causation approach would avoid the theoretical problems inherent in any attempt to compare relative degrees of fault where the defendant's negligence, or fault, is determined by principles of strict liability.

BURKE, Justice (dissenting).

I respectfully dissent.

In our earlier decision, *Butaud v. Suburban Marine & Sporting Goods, Inc.,* 543 P.2d 209, 212 (Alaska 1975), we said:

We believe that appellee misconceives the type of evidence necessary to establish a defense to a products liability claim. Appellee strenuously argues that

failing to maintain the machine, driving with a worn belt and racing the machine are sufficient to establish contributory negligence in the use of the product. We disagree. *The defense is limited to those occasions where the use concurs with knowledge of the particular defect, not the general negligence of the user as established in this case.* (emphasis added)

Today, in an apparent about face, the majority concludes that such "general negligence" will, however, permit a reduction of the award an injured consumer might otherwise recover. Such action, in my opinion, represents a significant step backward, in that it ignores the fundamental policy considerations that gave rise to the doctrine of strict liability in products cases.

As articulated in *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 377 P.2d 897, 901 (1962):

The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.

Clearly, this underlyng policy will be given little effect if a plaintiff is to be held responsible for his own injuries, to the extent that those injuries are caused by his own ordinary negligence, when he is not aware of the defect and the dangers associated with that defect. Accordingly, I would hold that a plaintiff's own negligence is relevant only in those cases where he is aware of a specific defect and voluntarily proceeds to encounter a known danger. *See Luque v. McLean,* 8 Cal.3d 1136, 104 Cal.Rptr. 443, 501 P.2d 1163 (1972).

In this case there is no evidence that the plaintiff had any knowledge of the defective condition of the product. Hence, I am of the opinion that his lack of due care, if any, in maintaining and operating the vehicle, should not be considered by the jury in determining its award of damages.

24. *Butaud, supra* note 1 at 212.